# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

AMERICAN ALLIANCE FOR EQUAL RIGHTS,
*Plaintiff*,

v.

McDONALD'S CORPORATION;
McDONALD'S USA, LLC; and
INTERNATIONAL SCHOLARSHIP & TUITION
SERVICES, INC.,
*Defendants*.

No. 3:25-cv-50

# MEMORANDUM IN SUPPORT OF <u>EMERGENCY</u> MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION
# <u>(RELIEF REQUESTED BY JANUARY 31, 2025)</u>

# TABLE OF CONTENTS

Introduction ..................................................................................................................1

Background..................................................................................................................2

   I.  Defendants run HACER, a contract-based scholarship that's open only to Hispanics. ...............................................................................................................2

   II.  HACER's ethnic bar injuries the Alliance's members, including Member A. .....5

Argument ....................................................................................................................8

   I.  This Court should enter a preliminary injunction. ..................................................8

      A.  The Alliance will likely succeed on the merits. ..............................................8

      B.  The Alliance's members will suffer irreparable harm without injunctive relief.............................................................................................................. 12

      C.  The equities favor the Alliance. ................................................................... 14

      D.  A preliminary injunction serves the public interest. .................................. 14

   II.  If the Court needs more time to consider a preliminary injunction, then it should enter a TRO to preserve the status quo. ...................................................... 15

Conclusion................................................................................................................. 16

Certification of Conference with Counsel ......................................................................... 18

## INTRODUCTION

On Christmas Day, a high-school senior in Arkansas found out that she'd been accepted to college—by her top choice, at that. But the college is out of state, and her parents can't afford to help with tuition. Faced with the choice of going somewhere else or taking out six figures in loans, she started looking for scholarships. One of America's most iconic companies, McDonald's, gives unusually large scholarships (up to $100,000) through a program called HACER. The catch? McDonald's gives them *only to Hispanics*. As a non-Hispanic white girl, the Arkansan cannot apply. Despite her financial need. Despite her inability to choose or control her ethnic heritage. And despite the fact that, just days ago, McDonald's announced it was stepping back from these kinds of reductionist and offensive "diversity" programs. Verif. Compl. ¶¶1-2.

This Arkansan is a member of the American Alliance for Equal Rights, and McDonald's and International Scholarship & Tuition Services—the company that runs HACER in Nashville—are violating 42 U.S.C. §1981. But time is too short to litigate at a normal pace: The application window for HACER closes on February 6, and students get only one shot to apply. To prevent irreparable harm and protect this Court's jurisdiction, Defendants should be enjoined "from closing the application window or picking a winner … until further order of this Court." *AAER v. Fearless Fund*, 2023 WL 6520763, at *1 (11th Cir. Sept. 30). And to give the Sixth Circuit at least some time to consider any emergency appeal, the Alliance respectfully asks this Court to rule **by January 31, 2025**.

1

# BACKGROUND

## I. Defendants run HACER, a contract-based scholarship that's open only to Hispanics.

McDonald's created and funds the HACER program. HACER—Spanish for "do"—stands for "Hispanic American Commitment to Education Resources." It's an annual contest that accepts applications from high-school seniors "all over the country." Anderson Decl., Ex.11 at 3. The contest pays winners a scholarship up to $100,000. Ex.11 at 3. Winners can have their scholarship renewed in later years. Ex.15 at 2-3, 6.

McDonald's hired ISTS to "comprehensive[ly]" administer HACER. Ex.19 at 3. ISTS handles "all day-to-day program administration." Ex.19 at 3. To apply, students must register with ISTS, make an account on ISTS's platform, and agree to ISTS's privacy policy. Ex.16 at 1; Ex.22 at 1; Ex.17 at 1-9. Once registered, students must fill out and submit their applications on ISTS's portal—a website "solely owned and operated" by ISTS. Ex.17 at 1. In short, there's no way to apply for HACER except through ISTS, and there's no way to use ISTS except by agreeing to its privacy policy. Ex.16 at 1; Ex.17 at 2.

ISTS's privacy policy is a contract between it and the applicants. ISTS gives applicants access to its services and the ability to apply for HACER. Ex.16 at 1; Ex.17 at 2-8. In return, applicants give certain rights to ISTS, including the right to collect and store their "Personally Identifiable Information" for its own proprietary purposes.

Ex.17 at 2-3, 4-6. The company can use that information to "analyze trends," "administer the Site," "track users' movements," and "gather demographic information about [its] user base." Ex.17 at 3. And ISTS can sell that information to its "partners," including "advertisers" that can use it "to send [the applicant] promotional materials." Ex.17 at 4-5.

When students apply for HACER, ISTS is charged with enforcing McDonald's eligibility requirements. As ISTS explains on the application's "Eligibility" page:

> **Who is eligible to apply?**
>
> Applicants must meet **all** of the following criteria to be eligible to apply to any of the scholarships offered through this Program.
>
> - Must be a current high school senior who is eligible to attend a two- or four-year college, university, or vocational/technical school.
> - Must be a legal U.S. Resident, U.S. Citizen, or a DREAMer/DACA recipient
> - Must be less than 21 years of age.
> - Must have a minimum 2.8 GPA.
> - Must have at least one parent of Hispanic/Latino heritage.
>   - Hispanic/Latino is an ethnic category, not a racial category; student applicants may be of any race. Applicants must be from a family that came from at least one of these countries/territories: Argentina, Belize, Bolivia, Brazil, Chile, Colombia, Costa Rica, Cuba, Dominican Republic, Ecuador, Guatemala, Honduras, Mexico, Nicaragua, Panama, Paraguay, Peru, Puerto Rico, El Salvador, Spain, Uruguay, or Venezuela.

Ex.1 at 1; *accord* Ex.15 at 2 (same, on FAQs page). McDonald's insists on, and repeats on its own materials, these same eligibility requirements. *E.g.*, Ex.9 at 4; Verif. Compl. ¶26, ¶28.

As ISTS makes clear with its double-emphasized "all" and seven uses of "must," HACER's eligibility requirements are strictly enforced—including the requirement that students be Hispanic. Ex.1 at 1; Ex.15 at 2. Of the 17,000 students who ever won, every

3

single person was "Hispanic." Ex.11 at 4; Ex.14 at 4. ISTS won't even let applicants open the application unless they answer four "required" eligibility questions, the last of which is "Are you of Hispanic/Latino heritage?" Ex.1 at 1-2. Once the application is opened, one of the "required" demographic questions is "Country of Family Origin," where applicants must select one of the 22 approved Hispanic countries. Ex.4 at 1. The reason? "[A]pplicants *must* be from a family that came from at least one of [those] countries." Ex.4 at 1 (emphasis added). At the end of the application, moreover, applicants must agree to the "Application Terms and Conditions." Ex.8 at 2. They must certify that "all" the information they provided is "accurate and complete." Ex.8 at 2. And they must let McDonald's "verify any of the information," including their ethnicity. Ex.8 at 2. McDonald's can "rescin[d]" scholarships based on "false or misleading" information provided in "any aspect of the application." Ex.8 at 2.

The application terms and conditions are a contract between McDonald's and the applicant. McDonald's gives applicants a chance to win its money. And applicants, in return, must waive their federal right to privacy under FERPA. Ex.8 at 2. And they must agree to follow McDonald's "code of conduct." Ex.8 at 2. That code makes applicants, among other things, refrain from "discriminatory communications" on several issues, including "religion." Ex.8 at 2. And it makes applicants "respect" "cultural differences." If applicants "do not adhere to the code of conduct," McDonald's has the right to "terminat[e] the[ir] scholarship." Ex.8 at 2. Recognizing that this agreement

creates a binding contract, McDonald's stresses that "*If you are under 18, your parent or guardian must also agree to these Terms and Conditions.*" Ex.8 at 2.

After applications are submitted, ISTS is charged with reviewing the submissions, picking the winners, and distributing the funds. Ex.19 at 3; Ex.20 at 5. ISTS empanels an "independent selection committee" of "judges" to pick 30 "winners." Ex.2 at 3. The committee's decisions are final and cannot be appealed. Ex.15 at 3. The judges assess the qualifying applications based on merit, including the applicant's performance on five required essays and an interview. Ex.7 at 1-2; Ex.9 at 3. After picking the winners, ISTS distributes the "scholarship funds" and handles all necessary "reporting." Ex.19 at 3; Ex.20 at 5.

For the current round of HACER (the Class of 2025), the application window will close on February 6, 2025. Ex.1 at 1. But McDonald's seems to appreciate that many students are only now getting into college and looking at scholarships: The tour it created to encourage students to apply to HACER has events scheduled for January 14, 28, and 30. Ex.21 at 1. After the application window closes in February, ISTS will choose the semifinalists in March, choose the winners in June, and distribute money to the winners' universities in July or August. Ex.3 at 1.

## II. HACER's ethnic bar injuries the Alliance's members, including Member A.

The Alliance has members, like Member A, who are being harmed by Defendants' ethnic discrimination. Blum-Decl. ¶¶6-7. Member A is a high-school senior from

5

Arkansas who will graduate this spring. A-Decl. ¶2. She is applying to colleges now, and she plans to attend college full-time in Fall 2025. ¶¶3, 8(a). She plans to seek a bachelor's degree in communications. ¶3. On Christmas Day, she learned that she had been admitted to a college in Virginia—the first so far, and her top choice. ¶4. But that college will cost her over $100,000, and her parents cannot afford to pay for her education. ¶5. So shortly after she learned about her admission, she started searching for scholarships. ¶6.

Member A is "able and ready" to apply for the current round of HACER, once a court orders Defendants to open it to all ethnicities. *Ne. Fla. Ch. of AGCA v. Jacksonville*, 508 U.S. 656, 666 (1993). She's able to apply because she satisfies all the contest's "eligibility requirements," aside from the ethnic one. *Id.*; *Fearless Fund*, 103 F.4th at 772. She's a U.S. citizen who is 17 years old with a 3.8 GPA. A-Decl. ¶8(a)-(d), ¶13(d); Blum-Decl. ¶11(a)-(d).

Member A is also "ready" to apply. *Jacksonville*, 508 U.S. at 666. Because she's already applied to colleges, she already has all the information and documents that HACER requires. A-Decl. ¶13. And she's actively investigating scholarships now. ¶6. She has already reviewed the application for HACER and decided how she would answer the questions. ¶¶12-13. And if she could, she would finish the application quickly, before the deadline. ¶13. She would follow all instructions, provide all necessary information, and complete all the necessary steps to apply. ¶¶13(a)-(g).

6

Member A sincerely wants to apply for the contest and win. ¶14. Her parents cannot pay for her college. ¶5. And the college that admitted her costs over $100,000 in tuition, books, room and board, and other necessities. ¶5. Absent scholarships, Member A will have to incur substantial student loans. ¶5. Member A would use the scholarship from McDonald's to cover her tuition and to avoid debt. ¶14. Without the stress of heavy debt, Member A could choose the college that's the best fit for her, focus on her studies, and pick a career that matches her passions. ¶14. She's also highly competitive, given her stellar grades, extensive extracurriculars, and commitment to community service. ¶15.

But Member A cannot apply because, to Defendants, she's the wrong ethnicity. ¶¶9-10. She's white and not Hispanic. ¶10. Her parents are from Canada and Germany—not Argentina, Belize, Bolivia, or any of the other countries on HACER's list. ¶10. If Member A tried to apply to HACER, she could not proceed past the first page, since she could not say that she is "of Hispanic/Latino heritage." Ex.1 at 1; Ex.9 at 4; Ex.15 at 2. Nor could she fill out the "required" field asking her to identify a Hispanic country of origin for her family. Ex.4 at 1. For the same reason, she could not agree to the part of McDonald's application terms and conditions that requires her to "confirm" that she is "eligible to receive scholarships granted under the [HACER] Program." Ex.8 at 2.

7

# ARGUMENT

Absent this Court's intervention, ISTS will close the application window for this round of HACER on February 6. Ex.15 at 2. The Alliance thus needs a preliminary injunction barring ISTS from closing the window or picking winners until this case reaches final judgment. *See, e.g.*, *Fearless Fund*, 103 F.4th at 780 (ordering that the Alliance was entitled to that relief); *Fearless Fund*, Doc. 142, No. 1:23-cv-3424 (N.D. Ga. Aug. 26, 2024) (granting the Alliance that relief). If this Court needs more time, the Alliance asks this Court to enter a TRO awarding the same relief until the resolution of the Alliance's preliminary-injunction motion. *See, e.g.*, *AAER v. Fearless Fund*, 2023 WL 6520763, at *1 (11th Cir. Sept. 30) (temporarily granting the Alliance that relief).

## I. This Court should enter a preliminary injunction.

The Alliance should get a preliminary injunction if it makes four showings: likely success on the merits, irreparable harm, the balance of equities, and the public interest. *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2013). The Alliance can make all four.

### A. The Alliance will likely succeed on the merits.

Section 1981 guarantees "[a]ll persons … the same right … to make and enforce contracts," 42 U.S.C. §1981(a), thus prohibiting "'discrimination in the making or enforcement of contracts against, or in favor of, any race.'" *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003). It bans racial discrimination in contracting by both public and private actors. 42 U.S.C. §1981(c); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). It also covers discrimination based on ethnicity and ancestry, *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 611-13 (1987), no matter which ethnicity is helped or harmed,

*Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 768 (2019); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). And it applies even before a contract exists; the statute bans not just terminating or changing a contract but also refusing to enter into a contract in the first place. *Domino's*, 546 U.S. at 476.

HACER implicates §1981 because the program is contractual. The word "contrac[t]" in §1981 essentially means "an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration." *Fearless Fund*, 103 F.4th at 775. That definition is broad. *Id.* And it can include charitable scholarships and grants. *E.g.*, *Am. All. for Equal Rights v. Founders First*, 2024 WL 3625684, at *3 n.7 (N.D. Tex. July 31). When those programs offer money to contestants "in exchange for their time, intellectual property, and [other] promise[s]," there is a classic bargained-for exchange. *Id.*

HACER is no exception. It gives students a shot at six-figure scholarships—prizes that could cover a student's entire college education. Ex.11 at 3. In exchange, students must agree to McDonald's terms and conditions and assent to ISTS's privacy policy. Ex.8 at 2; Ex.16 at 1; Ex.17 at 2-8. These contracts force applicants to license away their personal information, subject themselves to third-party advertising, and waive certain state and federal rights. Ex.17 at 2-6; Ex.8 at 2. Applicants also must avoid "communicat[ing]" in ways that McDonald's doesn't like and refrain from "conduct" that McDonald's finds "offensive." Ex.8 at 2. This quid pro quo is a contract. *E.g.*, *Founders First*, 2024 WL 3625684, at *3 n.7; *Fearless Fund*, 103 F.4th at 775.

9

Even without those explicit contracts, HACER would still implicate §1981 because the program itself is a contest. *See Am. All. for Equal Rights v. Fearless Fund*, 2023 WL 6295121, at *4 (N.D. Ga. Sept. 27) ("[C]ourts construe contests as offers for a unilateral contract."). "[N]early all jurisdictions have adopted the rule that contract law governs the sponsor-contestant relationship." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001) (cleaned up). The sponsor offers a chance to win a valuable prize, and "performance by the entrant of the act requested by the sponsor … constitutes an acceptance of an offer and forms a binding contract." *Id.* (cleaned up). HACER induces applicants to draft compelling personal stories and share them with Defendants. This process is valuable for Defendants: ISTS gets to charge McDonald's money to run a large scholarship program. And McDonald's gets to generate press and goodwill for the company. *See, e.g.*, Ex.10 at 3-4; Ex.11 at 3-4; Ex.12 at 1-2; Ex.14 at 4.

HACER does not just likely violate §1981—it egregiously does. As explained, Defendants outright ban non-Hispanics from applying, competing, or winning. The policy's eligibility requirements are "facially discriminatory" based on ethnicity, which is sufficient to trigger §1981. *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). So the Alliance "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014). Nor could Defendants possibly satisfy strict scrutiny. *See Gratz*, 539 U.S. at 276 n.23 (explaining that §1981 incorporates the Equal Protection Clause). HACER does

not pursue one of the "two compelling interests that permit resort to race-based … action." *SFFA v. Harvard*, 600 U.S. 181, 206-07 (2023). Even if it did, its categorial bar on non-Hispanics could not be narrowly tailored. *See id.* at 206-25; *Fearless Fund*, 103 F.4th at 777. If Defendants wanted to expand educational opportunities for underprivileged students, they would ask whether applicants are underprivileged (first-generation college students, low-income, etc.)—not whether they have one parent who comes from a Hispanic country.

*Fearless Fund* is directly on point. There, the Alliance sought a preliminary injunction against the Fearless Foundation, which ran a contest that awarded grants for businesses but required them to be owned by black females. 103 F.4th at 770-71. The Eleventh Circuit agreed that the Alliance was entitled to a preliminary injunction stopping Fearless from closing the application window or picking winners. *Id.* at 777-80. As the district court had found, Fearless's contest was "a contract." *Id.* at 775. Such a contest "operates as a unilateral offer to contestants," which they accept "by completing their entry" and "relinquish[ing] rights to [Fearless] that amount to legal detriments." 2023 WL 6295121, at *5. By "categorically barring" non-black applicants from this contest, Fearless violated §1981. 103 F.4th at 777-83. And Fearless had no valid defense. *See id.* at 775-79. Under *Fearless* and similar cases, "the Alliance has established a substantial likelihood that it will succeed on the merits." 103 F.4th at 779; *accord Founders First*, 2024 WL 3625684, at *1-5 (granting the Alliance a similar preliminary injunction against another similar contest).

11

## B. The Alliance's members will suffer irreparable harm without injunctive relief.

Without an injunction, the Alliance and its members will suffer at least three forms of irreparable harm: illegal ethnic discrimination; the lost opportunity to compete for the current round of HACER; and potential mootness. Courts have recognized these harms before, citing all three as reasons why the Alliance was entitled to preliminary injunctive relief in similar cases. *E.g.*, *Fearless Fund*, 103 F.4th at 780; *Founders First*, 2024 WL 3625684, at *5 & n.24.

**Discrimination**: The harm inflicted by Defendants' ethnic discrimination is irreparable. The HACER program subjects Member A and others like her "to 'a discriminatory classification' that prevents [her] 'from competing on an equal footing.'" *Founders First*, 2024 WL 3625684, at *5 (quoting *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995)). That ethnic discrimination is "irreparable." *Fearless Fund*, 103 F.4th at 780; *Founders First*, 2024 WL 3625684, at *5. "[D]iscrimination," the caselaw recognizes, is "essentially irremediable." *Gresham v. Windrush Partners*, 730 F.2d 1417, 1424 (11th Cir. 1984). The hurt, stigma, and exclusion from being "judged by ancestry" cannot be rectified or reliably quantified with dollars and cents. *Harvard*, 600 U.S. at 220; *see Nuziard v. Minority Bus. Dev. Agency*, 2024 WL 965299, at *45 (N.D. Tex. Mar. 5).

**Lost Opportunity**: Absent an injunction, Member A will forever lose her opportunity to apply for this round of HACER—another irreparable injury. These "lost opportunities" are irreparable because they, too, are "difficult, if not impossible, to

12

Case 3:25-cv-00050    Document 6-1    Filed 01/13/25    Page 14 of 20 PageID #: 50

quantify" with damages. *MacGinnitie v. Hobbs Grp.*, 420 F.3d 1234, 1242 (11th Cir. 2005). "These sorts of injuries, *i.e.*, deprivations of temporally isolated opportunities, are exactly" the type of injuries "[t]hat preliminary injunctions are intended to relieve." *D.M. ex rel. Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1003 (8th Cir. 2019); *accord Founders First*, 2024 WL 3625684, at *5 n.24 ("Lost opportunit[ies] justify" a finding of "irreparable harm."). Because HACER requires applicants to be high-school seniors, Member A could lose her first and only chance to apply. Even if she could apply again, "*each* lost opportunity to enter [a] contest works an irreparable injury." *Fearless Fund*, 103 F.4th at 780 (emphasis added).

**Potential Mootness**: The risk that, absent a preliminary injunction, this case will become moot and the Alliance will lose its right to judicial review is "also … irreparable harm." *Founders First*, 2024 WL 3625684, at *5 n.24; *see Garrison v. Hudson*, 468 U.S. 1301, 1302 (1984) (Burger, C.J., in chambers). Absent an injunction, Defendants will close the application window in February, select winners in June, relinquish the funds by August, and likely argue that this case is moot. Ex.3 at 1. If Defendants won that argument, then "the judicial process [would] be rendered futile by [their] action." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). A preliminary injunction is thus needed to avoid the risk that the Alliance and its members are left with "'no do over and no redress.'" *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

13

Case 3:25-cv-00050     Document 6-1     Filed 01/13/25     Page 15 of 20 PageID #: 51

### C. The equities favor the Alliance.

"[T]he balance of the equities weighs in the Alliance's favor." *Fearless Fund*, 103 F.4th at 780. Member A runs the risk of "forever losing [her] chance to compete in an application process that is race neutral—a right that the Supreme Court has described as 'foundational,' 'fundamental,' 'transcendent,' and 'universal.'" *Founders First*, 2024 WL 3625684, at *5. And any logistical burden on Defendants from pausing the program "pales in comparison to the [Alliance's] interest in rooting out race discrimination." *Fearless Fund*, 103 F.4th at 780. No one has a valid interest in giving or getting money because of ethnicity, especially not through a program that likely violates federal law. And any harm to Defendants from a preliminary injunction can be reduced by "expedit[ing]" discovery, motions practice, and trial. *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) (per curiam).

### D. A preliminary injunction serves the public interest.

"[T]he public interest" favors the Alliance too. *Fearless Fund*, 103 F.4th at 780. The public has a strong interest in "vindicating §1981's terms and aims by ensuring racial equality in contracting." *Fearless Fund*, 103 F.4th at 780; *accord Founders First*, 2024 WL 3625684, at *5. But the public has no valid interest "in the perpetuation of unlawful" programs, *Newby*, 838 F.3d at 12—especially when those programs involve "discriminatory practices," *Founders First*, 2024 WL 3625684, at *5.

## II. If the Court needs more time to consider a preliminary injunction, then it should enter a TRO to preserve the status quo.

At a minimum, the Court should enter a TRO preventing Defendants from closing the application window or picking winners until further order of the Court. While a preliminary injunction would last until this Court enters final judgment, a TRO would last until this Court resolves the preliminary-injunction motion. *Blount Pride, Inc. v. Desmond*, 690 F. Supp. 3d 796, 802 (E.D. Tenn. 2023). Apart from that difference in timeframe, the standard for getting a TRO is essentially "the same as the standard for [getting] a preliminary injunction." *Provectus Biopharmaceuticals v. Dees*, 2016 WL 8738437, at *1 (E.D. Tenn. Sept. 16). So the Alliance is entitled to that relief as well, for the same reasons identified above.

In fact, if a TRO is needed to give the parties and the Court sufficient time to consider a preliminary injunction, this Court can enter one without assessing the likely merits. A court can issue "administrative" relief that "buys … time to deliberate" on the request for lengthier relief. *United States v. Texas*, 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring) (discussing administrative stays); *accord Klay v. United Healthgrp.*, 376 F.3d 1092, 1099-100 (11th Cir. 2004) (discussing administrative injunctions). This authority comes from the federal courts' inherent authority and from the All Writs Act, 28 U.S.C. §1651, which allows courts to issue what are essentially "status quo orders." *V.N.A. of Greater Tift Cnty., Inc. v. Heckler*, 711 F.2d 1020, 1028 (11th Cir. 1983); *see, e.g.*, *Texas*, 144 S.Ct. at 798 (Barrett, J., concurring) (collecting cases); *Trump v. Thompson*, 2021 WL

15

Case 3:25-cv-00050   Document 6-1   Filed 01/13/25   Page 17 of 20 PageID #: 53

5239098 (D.C. Cir. Nov. 11); *Trump v. Vance*, 2019 WL 5703884 (2d Cir. Oct. 7) (similar). Because these orders are needed to let the court "make an intelligent decision" on the broader request, they of course don't require the court to predict how it will resolve that request on "the merits." *Texas*, 144 S.Ct. at 799; *accord Klay*, 376 F.3d at 1100-01. They are appropriate if they are "calculated in the court's sound judgment to achieve the ends of justice," *Klay*, 376 F.3d at 1100, which a short pause on an arbitrary deadline for college scholarships would be.

## CONCLUSION

For all these reasons, Plaintiff respectfully asks this Court to preliminarily enjoin Defendants from closing the application window or picking winners for HACER until further order of this Court. This Court should enter that relief as a temporary restraining order, should it need more time to decide the preliminary-injunction request. In all events, and given the need to build in some time for an emergency appeal, Plaintiff respectfully asks this Court to grant or deny the requested relief **by January 31, 2025**.

Respectfully submitted,

Dated: January 12, 2025

*/s/ Cameron T. Norris*

Adam K. Mortara
  (TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Thomas R. McCarthy*
  (VA Bar No. 47154)
Cameron T. Norris
  (TN Bar No. 33467)
R. Gabriel Anderson*
  (TX Bar No. 24129302)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22201
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice* application forthcoming

*Counsel for Plaintiff*

# **CERTIFICATION OF CONFERENCE WITH COUNSEL**

The Alliance's counsel could not contact defense counsel because the Alliance does not yet know who is representing Defendants. *See* L.R. 7.01(a)(1). In addition to physical service, the Alliance's counsel is contemporaneously sending its complaint and its preliminary-injunction motion, brief, and exhibits to Defendants electronically. *See* L.R.65.01. Specifically, the Alliance emailed these documents on January 12, 2025, to the following:

- Desiree Ralls-Morrison, General Counsel of McDonald's, desiree.ralls-morrison@us.mcd.com

- Angela Steele, U.S. General Counsel of McDonald's, angela.steele@us.mcd.com

- Becky Sharpe, CEO of ISTS, bsharpe@applyists.com

- ISTS, technology@applyists.com & contactus@applyists.com

Dated: January 12, 2025
*/s/ Cameron T. Norris*
Counsel for Plaintiff